## A. G. COMPTON v. YOUNG & BOREN.

In a suit against partners on their notes given upon a settlement of accounts between them and the plaintiff, one of the defendants pleaded in recon-vention that the plaintiff was liable for certain book accounts due to the firm which the plaintiff undertook to collect and apply to the notes sued on. On the trial the evidence failed to show a liability on the plaintiff for the uncollected book accounts. *Held*, that, under such circumstances, it was error to admit in evidence against the plaintiff the account books of the defendants, without definite explanation of the use to be made of them by the jury.

ERROR from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by the plaintiff in error, A. G. Compton, against John S. Young and Elijah T. Boren, late partners in trade, upon two promissory notes, dated January 1st, 1853, for $1322 33, each, subject to a credit of $673 20, of date March 29th, 1853.

The defendant Young accepted service of the writ. Boren, the other defendant, answered with a general denial, a plea of pay-ment and a special answer, alleging that in the month of March, 1853, he and his co-partner, the said Young, sold and delivered to the plaintiff their stock of goods in the town of Caldwell, Bur-leson county, for the sum of four thousand dollars, which the plaintiff promised to pay, but had failed so to do. That the plain-tiff fraudulently took the books and accounts of the firm of Young and Boren out of the possession of this defendant, and at the same time promised this defendant to collect and apply the money col-lected to the payment of the notes sued on; that the said accounts amounted to the sum of ten thousand dollars; that the plaintiff had collected on said accounts a large amount, to wit, $3,000, and had permitted the remainder to become barred by the statute of limitations: Wherefore the plaintiff had become liable to defend-ant in the sum of $10,000, for which this defendant prays judg-ment in reconvention. By a further answer, Boren alleged that the plaintiff fraudulently combined and colluded with the defendant Young to cheat and defraud this defendant, and by such fraudu-

lent combination obtained the books and accounts of the firm of
Young and Boren.

The plaintiff read in evidence the notes sued on, and the credit
of $673 20 endorsed on one of them.

The defendant Boren introduced the deposition of J. M. Norris,
Esq., who testified that the defendants did business as merchants
and partners at Caldwell, Burleson county, from about the 20th
of August, 1852, to the 1st of April, 1853; when they dissolved
and ceased business, and their books and accounts were placed in
witness' hands; that witness had heard all the parties say that
Young and Boren had purchased goods from the plaintiff on a
credit; but witness does not know, except from hearsay, whether
they were paid for before the dissolution of the firm; that Young
and the plaintiff say they were not. That soon after the dissolu-
tion, the plaintiff and Young brought the books and papers of
Young and Boren to the witness, the plaintiff appearing to control
them, and witness thinks he receipted for them to the plaintiff;
that Young and the plaintiff told witness he was to collect the
book accounts for the benefit of the plaintiff, to whom, they said,
the firm was indebted; and instructed the witness that neither
Young nor Boren was to meddle with the books, nor to receive any
of the money when collected, but that the plaintiff was to control
witness in the collections. But witness did not consider that the
books, &c., were placed in his possession as the attorney of the
plaintiff particularly; that he supposed himself to be collecting for
the firm, and intended to take his fees out of the money collected.
That Boren was not present when the books were brought; but
came the next morning and demanded the books and papers of the
witness, saying that he did not know what Young and Compton
meant; that he, Boren, could have collected the accounts as well as
any one, and thus have saved the expense of collecting. That
Boren appeared angry and dissatisfied, and witness informed him
of his instructions from Young and Compton. That Compton told
witness to let Boren assume certain specified accounts, and Comp-
ton himself assumed certain others, all of which were shown by
the books. That the books would show the amount of the book
accounts, and also the amounts collected by the witness and paid

over to Compton. That witness does not recollect how long the books remained in his hands, but remembers notifying Young, Boren and Compton that he could make no progress in collecting in consequence of many of the debtors claiming some settlement, or some promised indulgence, which Young, when appealed to on several occasions, acknowledged. That witness informed the parties further that he would not try to do anything more with the accounts, but would receive payments offered him; and also informed them that the statute of limitations would bar many of the accounts if they were not attended to. That in consequence of his instructions from Young and Compton, witness was never willing to let Boren take the books. That none of the accounts were barred by limitation when left with witness; but that when he gave them up, all were barred except such as had been collected or reduced to notes or judgments. That if Compton ever attempted to collect any of the accounts, witness does not know it. The witness identified the books by writing his name upon them, &c. On cross examination, witness stated that he did not know whether Young or Boren was the managing partner of the firm; and that many of the uncollected debts were on solvent men. The defendant Boren offered in evidence the books of Young and Boren, to which the plaintiff objected that they were not admissible under the pleadings and were irrelevant to the issue. The court overruled the objection, and admitted the evidence; and the plaintiff excepted.

The plaintiff introduced the defendant Young as a witness, who testified that the firm of Young and Boren bought a stock of goods from the plaintiff amounting to $7,350. That about the 29th of March, 1853, the parties had a settlement, and the defendants sold to the plaintiff the stock then remaining on hand, about $2,278, which extinguished one of the three notes for $1,322, and left a balance which is placed as a credit on one of the notes sued on. That after the sale of the goods by the defendants to the plaintiff, witness took the books of the firm, and went in company with the plaintiff to the office of James M. Norris, Esq., and placed them in his hands for collection. That Norris was instructed to pay over the money collected to the plaintiff, and not

to permit either the witness or Boren to meddle with the matter. That Boren did not object to the books going into the hands of Norris at the time, but said on the evening of the same day, that it created an unnecessary expense. On cross-examination, the witness stated that when he took the books to Norris, Boren was not present; that the books were kept by witness, and he believed them to be correct. That the plaintiff, Compton, did not take the books and accounts as payment of the amount due him, and had no other control over them than to receive the money when collected. That all the credits to which Young and Boren were entitled, were the one placed on the note, and the amount collected by Norris. That the settlement between plaintiff and defendents, was made on the 29th of March, 1853, at which time the notes were given, and dated back to January 1st, 1853, as interest was due from that date. That all accounts between the two parties were settled up to that time.

The jury returned a verdict in favor of the defendant for $164 74. The plaintiff moved for a new trial, and the defendant entered a remittitur, of $164; whereupon the court overruled the plaintiff's motion. The plaintiff prosecuted his writ of error.

*J. D.* and *D. C. Giddings* for the plaintiff in error. The first error assigned, is that of permitting the books of defendant to go to the jury; to the introduction of which the plaintiff excepted, because the same were not admissible under the pleadings, and were irrelevant to the issue, and not properly proven and identified. That it was error in admitting these books, is apparent. There is no allegation in the pleadings, that would notify the plaintiffs that such a defence would be relied on, or what proof to bring to meet it under a broad allegation that the plaintiff took the books of the defendants fraudulently, that the books and accounts amounted to the sum of ten thousand dollars, without giving the name of an individual account, or an entry in the books, date, amount, item, or anything else so as to apprise the opposite party of the defence relied on, or to apprise him of what proof he would be expected to meet, except it be that he did not take the books. Could he be expected under such allegations to be prepared with proof to show

that the accounts were paid before the books went into his hands; that the parties, against whom the accounts were, were insolvent, or had offsets against the firm, without being apprised of what accounts and whose debts he was to be charged. He did come with proof to show that the books were never in his hands or under his control, any farther than to receive from the attorney of the firm whatever amounts he might collect and pay over to him, and this is an answer to the whole plea, and upon this proof the defendants failing to show that the books and accounts were ever in the hands or under the control of plaintiff, or that he had anything to do with them, the court ought to have withheld them from the jury.

*A. M. Lewis*, for the defendant in error. It was not error in the court to allow the books to be read in evidence; 1st. Because it had been proven that the plaintiff took them from said defendant not only without his consent, but that he retained them contrary to his express wishes. 2d. Because they were necessary to explain the testimony of Norris, and in fact formed a portion of his testimony. 3rd. Because it was proven that defendants kept correct books; (see both testimony of Young and Norris,) that defendants kept no clerks, that defendant made suppletory that the books were correct. It was impossible for defendant in any other manner to prove that portion of his offset against plaintiff's claim; and plaintiff in the whole transaction gave full faith and credit to their correctness; (see 1 Greenleaf on Ev., art. 118 and 119, and notes; 18 Tex., 418.) And lastly, because the plaintiff did not object to the correctness of the books when shown to him.

The showing for a new trial was insufficient in not showing any ground of surprise. The testimony of Norris was on file among the papers of the cause before the trial. If the plaintiff had reason to suppose that he could rebut it, he ought to have done so, or in case he could not do so at the time, he might have shown (if he could) cause for continuance. The testimony of Norris pointed out the reading of the books, and showed all before the trial that it did afterwards.

Bell, J. It does not clearly appear from the statement of

Compton v. Young.

facts, what the evidence was in the court below. It is shown that the account books of the defendants were given in evidence before the jury, but we are not informed, with any particularity, what those books contained. It seems that only certain portions of their contents have been copied into the statement of facts. The evidence seems to have been presented to the jury in a manner somewhat loose and unintelligible, and we think it was error of the court to permit the account books of the defendants to go into the hands of the jury, under the circumstances, without some more definite explanation of their contents, than could be extracted from the testimony of the witnesses. It is said that some of the persons, who appeared by the books to be indebted to the firm of Young and Boren, were solvent and responsible; but the jury was not told who were solvent and who were not, and there is nothing in the testimony to warrant the conclusion that Compton controlled the accounts due to the defendants, in any such manner as to make himself responsible for everything which appeared by the books to be due to Young and Boren. The suit was upon notes given upon a settlement of accounts, the testimony to support the claim of Compton is brief, simple and easily intelligible. We think the introduction of the books of Young and Boren, without definite explanation of the use to be made of them by the jury, was calculated to involve them in error, and that the ends of justice will be better served by another trial. The judgment is reversed and the cause remanded.

Reversed and remanded.